PATRICK SILVER *vs.* PATIENCE WORCESTER, executrix of the will of GEORGE WORCESTER.

Cumberland.    Opinion June 6, 1881.

*Auditor.   Evidence.   Books of account.*

An auditor can receive only such evidence as would be admissible were the case he is hearing on trial in court.

In a suit for labor and services brought or prosecuted against the estate of a deceased person, and heard before an auditor, the plaintiff, unless the defendant is a witness in relation to facts occurring before the death of such deceased person, cannot testify as to such facts except as allowed under the common

law of the State to present in suitable cases his books of account and verify them by his suppletory oath. Unless the entries in such books are intelligible in themselves as setting forth in substance the facts which constitute a right of action in plaintiff's favor against the deceased, the explanation of such entries must come from witnesses other than the plaintiff. It is not competent for him to testify that charges which apparently represent services rendered for third persons, or which do not indicate that they were rendered to the deceased, were actually so rendered.

It is not competent for a defendant in such case to give in evidence his counter-entries of work done by the plaintiff, or to prove by his books the rate of wages which he is to pay.

ON EXCEPTIONS from superior court, Cumberland.

Assumpsit for labor performed for the testator in his lifetime.

The case was heard by an auditor and the following are the material portions of his report.

"Pursuant to the foregoing commission, being first duly sworn, and after giving due notice to both parties, I have heard, examined and fully considered their evidence and arguments, and I now respectfully report as follows :'

"Confessedly the plaintiff was a joiner and carpenter in the service and employ of defendant's testator in each of the months named in the plaintiff's declaration.  .  .  .  .

"Plaintiff offered books 1, 2, 3, 4, and his suppletory oath. I ruled that original entries made by the plaintiff daily in the ordinary course of his business, showing his account for labor in items not exceeding $6.67, accompanied by his suppletory oath would be evidence at common law and received them on condition that the plaintiff would exhibit the books in court though defendant's counsel seasonably objected. Plaintiff had no other evidence to the question of time and if that should have been excluded, he can be allowed no more time than defendant admits."  .  .  .  .  .  .

"Plaintiff offered to testify that all charges in the books not 'crossed out,' were of labor done by him for the defendant's testator, at the latter's request, and that names of other persons in some of the entries were written to designate owners of premises where work was done. The defendant's counsel objected that this would contradict the written entries, some of which, as he claimed, were against other persons."

"I deemed it expedient to admit this testimony, and taking it and the books as evidence, I find that the plaintiff worked for the defendant's testator the time accredited in the account stated at the close of this report."

The report further shows that the defendant offered the testator's books in his handwriting as evidence of time of service and wages, and that they were excluded by the auditor.

At the trial before the court without the intervention of a jury subject to exceptions in matters of law, the only evidence offered by either party was the report of the auditor; and the presiding justice ruled as a matter of law,

*First,* That the auditor rightfully admitted the plaintiff's books and rightfully allowed the plaintiff to testify as stated in his report.

*Second,* That the defendant's books were not admissible for the purposes named in the report and that the auditor rightfully excluded them. To these rulings the defendant excepted.

*J. H. Fogg,* for the plaintiff.

Revised Statutes c. 82, § 87, refers expressly to the five preceding sections and does not abrogate or annul the rule of evidence as it existed at common law relative to the books and suppletory oath of a party. *Kelton* v. *Hill,* 58 Maine, 114; *Mitchell* v. *Belknap,* 23 Maine, 475; *Cogswell* v. *Dolliver,* 2 Mass. 217; *Dunn* v. *Whitney,* 10 Maine, 10; *Mathes* v. *Robinson,* 8 Met. 269.

The plaintiff had a right to explain the entries in his books in the manner set forth in the auditor's report. *Furlong* v. *Hysom,* 35 Maine, 332; *James* v. *Spaulding,* 4 Gray. 451; *Barker* v. *Haskell,* 9 Cush. 218.

The defendant's books were rightfully excluded. *Morse* v. *Potter,* 4 Gray, 292; *Towle* v. *Blake,* 38 Maine, 95.

*John J. Perry,* for the defendant, cited: 1 Wharton's Ev. 465; *Kelton* v. *Hill,* 58 Maine, 114; 1 Greenl. Ev. 140, note, 141; *Cogswell* v. *Dolliver,* 2 Mass. 217; *Mathes* v. *Robinson,* 8 Met. 269; *Faxon* v. *Hollis,* 13 Mass. 427; *Dunn* v. *Whitney,* 10 Maine, 10; *Amee* v. *Wilson,* 22 Maine, 116; *Mitchell* v. *Belknap,* 23 Maine, 475; *Keith* v. *Kibbe,* 10 Cush. 35;

*Gorman* v. *Montgomery*, 1 Allen, 416; *Dexter* v. *Booth*, 2 Allen, 559; *Towle* v. *Blake*, 38 Maine, 95; *Faunce* v. *Gray*, 21 Pick. 243; *Morse* v. *Potter*, 4 Gray, 292; *Augusta* v. *Windsor*, 19 Maine, 317; *McLellan* v. *Crofton*, 6 Maine, 307; *Union Bank* v. *Knapp*, 3 Pick. 96; *Faxon* v. *Hollis*, 13 Mass. 426; *Prince* v. *Smith*, 4 Mass. 455; 1 Salk. 285; *Leighton* v. *Manson*, 14 Maine, 208.

BARROWS, J.   An auditor can receive only such evidence as would be admissible were the case he is hearing on trial in court, and his report is liable to be impeached and must be amended so far as it is founded upon any evidence not legally competent. *Paine* v. *M. M. Ins. Co.* 69 Maine, 568.

This suit being against the representative of a party deceased, the testimony of the plaintiff is competent only to the same extent as it would have been, by way of suppletory oath to his books, prior to the passage of the general statute relieving parties and interested witnesses from the disability under which they labored at common law.   See *Kelton* v. *Hill*, 58 Maine, 114; *Swain* v. *Cheney*, 41 N. H. 234.

The exception to the ancient rule of the common law was one introduced by necessity, to prevent a failure of justice in cases where there was little probability that anybody could be found aside from the parties who could give testimony touching certain transactions which singly were of no great pecuniary importance but liable to become so by aggregation, and thus in the end to be the subject of controversy.

Before the statute making parties witnesses, in suits prosecuted while both were living was enacted, the courts, in some of the New England States especially, had occasion often to consider the extent and limitations of this exception; and in certain directions these limitations are distinct and clearly established, while in others we find a border land of debatable questions which seems to be continually enlarging notwithstanding the often repeated declarations of the court that the exception was one which should not be extended unless in cases of necessity, and is not to be favored.

Thus the rule that the suppletory oath should not be received in support of cash items above forty shillings or $6.67,

has been firmly adhered to, *Dunn* v. *Whitney,* 10 Maine, 9 ; nor of charges for a single piece of work occupying considerable time and done under circumstances where it might well be supposed that other proof might be had.    *Towle* v. *Blake,* 38 Maine, 95 ; *Earle* v. *Sawyer,* 6 Cush. 142 ; *Henshaw* v. *Davis,* 5 Cush. 145 ; nor of the· rate of wages or price of goods. *Towle* v. *Blake, supra; Mitchell* v. *Belknap,* 23 Maine, 475.

On the other hand the decisions, affected in some of the States by statutory provisions, have been by no means so uniform where the questions have been touching the bulk and weight of the goods sold ; [Compare *Shillaber* v. *Bingham,* 3 Dane's Abr. 321 ; *Leach* v. *Shepard,* 5 Vt. 363 ; *Kingsland* v. *Adams,* 10 Vt. 201 ; *Clark* v. *Perry,* 17 Maine, 175 ; and *Mitchell* v. *Belknap, supra,* with *Leighton* v. *Manson,* 14 Maine, 208] ; or touching the mode in which the books shall be kept ; or the character of the memoranda as requiring explanation ; [Compare *Faxon* v. *Hollis,* 13 Mass. 427 ; *Smith* v. *Sanford,* 12 Pick. 139 ; *Hall* v. *Glidden,* 39 Maine, 445 ; with *Forsythe* v. *Norcross,* 5 Watts, 432 ; *Walter* v. *Bollman,* 8 Watts, 544 ; and *Littlefield* v. *Rice,* 10 Met. 287 with *Luce* v. *Doane,* 38 Maine, 478].    Compare also the requisites for admissibility as stated in note to Greenl. on Ev. vol. 1, § 118, and *Dwinel* v. *Pottle,* 31 Maine, 167, with *Mathes* v. *Robinson,* 8 Met. 269 ; *Witherell* v. *Swan,* 32 Maine, 247, and *Hooper* v. *Taylor,* 39 Maine, 224, and the cases therein recited.

In some of the cases there cited, it is obvious that the record disclosed very little of the claim and transaction which with the aid of his own suppletory oath, the party was endeavoring to establish.    The reliance must have been largely upon the testimony produced by the party to explain and apply the record which was not in itself intelligible.    How much of the explanation came from disinterested witnesses does not always appear. Yet the general rule has been recognized even in the cases which at the first glance seem like exceptions.    Thus in *Witherell* v. *Swan,* 32 Maine, 250, the court refer expressly to the requirement that the book shall be kept intelligibly, fairly and truthfully, while they admit in a suit for the fees of a surveyor of

lumber, the book on which he recorded his surveys wherein no charge was made against the defendant, except as implied by the record of his name as the buyer of the lumber surveyed. The book seems to have been admitted because the statute imposed upon the buyer the duty to pay for the surveying and fixed the amount of the fee and so no direct charge to the defendant was deemed necessary.

The case of *Furlong* v. *Hysom*, 35 Maine, 332, where the charges on the book were made to the wife, and the suit was against the husband, proceeded in like manner upon the legal liability of the husband to pay for suitable and necessary articles furnished to the wife, and the books were received with the suppletory oath to establish the sale and delivery only.

Careful attention to the precise points which were in controversy between the litigating parties and upon which the testimony was received, will enable us to reconcile some apparent discrepancies in the decisions, and to see that the courts have seldom gone beyond the requirements of *necessity*, preferring to leave those who fail to furnish better evidence of their contracts where it can be had, or to have frequent settlements when the transactions are fresh in the minds of both parties, to the consequences of their own neglect.

Thus it will be seen that in cases where the goods are delivered to third parties or the services are rendered at the call or for the apparent benefit of third parties, and the controversy between the litigant is not merely as to amount or quantity, but whether the defendant is chargeable, the book and suppletory oath are held not to be admissible, unless proof of the defendant's liability is furnished *aliunde, Soper* v. *Veazie*, 32 Maine, 122; *Mitchell* v. *Belknap*, 23 Maine, 481; *Keith* v. *Kibbe*, 10 Cush. 35; *Amee* v. *Wilson*, 22 Maine, 116.

In *Kendall* v. *Field*, 14 Maine, 30; the testimony and shingle were admitted only to show the amount of labor that was done under a contract otherwise proved.

In *Tremain* v. *Edwards*, 7 Cush. 414, the testimony under consideration, aside from the mere matter of the items of the

account was drawn out by defendant on cross-examination and for this reason deemed unobjectionable.

Nor is there anything inconsistent with this in *Ball* v. *Gates*, 12 Met. 491, where the liability was established by testimony *aliunde*, but, as might be expected, the person who called for the work was unable to recollect the particular items, as to which the suppletory oath to the books was therefore allowed.

So in *James* v. *Spaulding*, 4 Gray, 451, the parol evidence to show that defendant requested the plaintiff to make his charges in a certain form, was not the testimony of *the plaintiff himself*, nor was the charge in the book relied upon *by him* to show to whom the credit was given. He claimed and was allowed to prove by the testimony of others that it was given to the defendant and not to the person named in the book.

It may be fairly set down as settled law that in all such cases (except as to *details* which the third party could not be expected to remember) the liability of the defendant must be established by proof outside of the plaintiff and his books.

Neither is this species of evidence admissible to prove a special contract, price, rate of wages, value of goods, or other matters about which it would be reasonable to suppose that the testimony of disinterested witnesses might be procured. The decisions are also uniform in support of the doctrine stated by PARKER, C. J. in *Cummings* v. *Nichols*, 13 N. H. 425, thus; "The rule does not extend so far as to authorize the use of his book by a party to curtail or defend the claims of other parties against him." Thus it cannot be shown by the defendant's entries how much time the person performing the service lost, while engaged at work for defendant. *McKewn* v. *Barksdale*, 2 N. & McC. 17. Nor where the plaintiff goes on his original entries, will the defendant be allowed to give in evidence his own counter entries of the same work. *Summers* v. *McKim*, 12 S. & R. 405. To the same effect is *Morse* v. *Potter*, 4 Gray, 292.

It is well said in Swift's Evidence, 81, 82; "The book ought to be kept in a fair and regular manner, and the articles truly entered at the time of the delivery, or the performance of the services, so as to be consistent with, and support the oath of the

party; for the book is to be considered the essential part of the evidence and the oath of the party as supplementary to it."

In *Cummings* v. *Nichols, ubi supra,* Chief Justice PARKER epitomizes the doctrine as follows (citing *Eastman* v. *Moulton,* 3 N. H. 157) : "there is no particular form in which the book of a party must be kept in order to its admission as evidence in support of his account. But it must be kept in such a mode as to show of itself a charge against the adverse party, and the nature of that charge, so that the book in connection with the party's oath that the book is his original book of entries, that the charges are in his hand writing, that they were made at the time they purport to have been made, and at or near the time of the delivery of the articles or the performance of the services, will show the nature of the claim without further evidence from the party to interpret the meaning of arbitrary characters, the signification of which is known only to himself. In ordinary cases, the suppletory evidence of the party in support of his book goes no further than to the particulars above specified." The case before us is presented upon exceptions to the ruling of the judge, affirming as correct the doings of an auditor in the admission and exclusion of testimony. The auditor's report shows his work carefully, intelligently, and (with a single exception which the report itself furnishes the means of correcting,) we think correctly done. The plaintiff sues to recover a balance which he says is due him from the estate of George Worcester, defendant's testator, for wages earned during the last four years of Worcester's life. That he was more or less, but not constantly, in Worcester's employ during every month in that period was admitted by the defendant; but she disputed the number of days' work claimed in certain months, and the rate of wages demanded.

To sustain his charges, plaintiff offered certain diaries kept by him for the years through which the account extended, and his suppletory oath to the entries therein made. If the entries had purported to be his daily or contemporaneous account of the time employed for Worcester, we see no reason why they should not be admitted with his suppletory oath to their correctness. But very few of them bear any such signification. Very many

of them import something inconsistent, being in form, charges similar to those which he was accustomed to make when he worked for other people, and not in any manner on the face of them connected with Worcester. They are in many cases, distinct charges of the work to individuals other than Worcester, in others, apparently memoranda of the place or kind of work he was engaged in. That in more or less of these days he was working for Worcester, seems probable. The auditor reports that, without allowing entries like these in some of the months, the time admitted by the defendant cannot be made up. Under these circumstances, the auditor, against defendant's objections, allowed plaintiff to testify " that all charges in the books not crossed out, were of labor done by him for defendant's testator at the latter's request, and that names of other persons in some of the entries were written to designate owners of premises where work was done."

This we think went beyond the proper limitations of proof by book and suppletory oath. In effect it was making plaintiff a witness generally, merely refreshing his own memory by the entries, instead of verifying the books by his oath.

Rejecting such entries and testimony, the auditor says will reduce plaintiff's account of the time "to the time admitted by the defendant in all the disputed months except September, 1877, and January, 1878," and will reduce his claim for said September, nine and one-half hours. This should be done, not because the form of the charges is "not susceptible of explanation by parol," but because in a suit against the representative of a deceased party, the explanation must come from other testimony than that of the plaintiff, as in *James* v. *Spaulding*, 4 Gray, 451. The rate of wages seems to have been fixed by the auditor upon testimony of disinterested witnesses. The books and accounts offered by the defendant were properly rejected, according to the decisions above referred to, the correctness of which we see no occasion to question. Neither the rate of wages nor the time of service could be properly shown by the entries of the defendant's testator. His books do not appear to have been called for, or relied upon by the plaintiff; and there is no ground of necessity upon

which such entries made by a party can become evidence which it is competent for him to offer in his own favor.

The auditor's report furnishes a basis for a new and (so far as appears) correct computation. It seems to have been framed so as to present the questions we have considered, and protect the rights of both parties, without making a rehearing before him necessary.

*Exceptions sustained.*

APPLETON, C. J., WALTON, VIRGIN, LIBBEY and SYMONDS, JJ., concurred.